UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **JASPER VARGAS,** )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>Respondent, ) | **Case No. 10-CV-02231** |

## <u>OPINION</u>

This case is before the court for ruling on the Motion for Reconsideration (#8) filed by Petitioner, Jasper Vargas.  This court concludes that Petitioner has shown that his Motion to Vacate, Set Aside, or Correct Sentence (#1) was timely filed.  Therefore, Petitioner's Motion for Reconsideration (#8) is GRANTED.  This court therefore vacates its Opinion (#6), which dismissed the Motion (#1) as untimely.  Following this court's careful consideration of the merits of Petitioner's Motion (#1), this court concludes that Petitioner is not entitled to relief under 28 U. S. C. § 2255.  Accordingly, Petitioner's Motion (#1) is DENIED on the merits.

BACKGROUND

On October 8, 2010, Petitioner, Jasper Vargas, filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (#1) and a Memorandum in Support (#2).  Petitioner argued that: (1) his constitutional right to effective counsel was violated because his trial counsel failed to challenge expert testimony provided by the case agent, Douglas Goodmanson, and his appellate counsel failed to raise the issue on appeal; (2) he was denied the effective assistance of counsel because his trial

counsel did not object to evidence which bolstered the credibility of two key prosecution witnesses and his appellate counsel did not raise the issue on appeal; and (3) because of the cumulative effect of these failures he was denied a fair trial. On November 5, 2010, the Government filed its Response to the Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (#4). The Government argued that the Motion was untimely and also provided a detailed response to Petitioner's claims. On November 22, 2010, Petitioner filed a Reply (#5).

On July 26, 2011, this court entered an Opinion (#6). After careful and thorough review, this court concluded that Petitioner's Motion under § 2255 was time-barred. This court concluded that Petitioner's judgment became final on March 31, 2009, 90 days after his conviction was affirmed by the Seventh Circuit and his time to file for a petition for a writ of certiorari expired. Therefore, to be timely, Petitioner's Motion under § 2255 had to be filed by March 31, 2010. This court noted that, on July 30, 2009, Petitioner filed an untimely petition for a writ of certiorari with the Supreme Court. (Docket No. 09-5730). The Supreme Court denied Petitioner's petition for a writ of certiorari on October 5, 2009. This court concluded that an untimely petition for a writ of certiorari does not toll the statute of limitations under § 2255. Therefore, this court concluded that Petitioner's Motion under § 2255, filed on October 8, 2010, was time-barred because it was filed 191 days late.

This court recognized that Petitioner argued in his Reply (#5) that the substantive part of his petition for a writ of certiorari was timely filed on March 20, 2009. Petitioner stated that the Supreme Court noted "technical deficiencies" in his petition and requested that he submit a "declaration of indigence." Petitioner claimed that the Supreme Court made it clear to him that the "substance of the petition was accepted and was not subject to further

revision." He went on to state that in June 2009 the Supreme Court "had trouble finding an active case for petitioner in its database and requested further details." He referred to a letter he attached from the Clerk of the Supreme Court. However, this letter was not attached by the Petitioner and the Supreme Court's website indicated that Petitioner's petition for a writ of certiorari was not filed until July 30, 2009.

This court stated that it appeared that Petitioner was making an argument for equitable tolling. This court stated that, if Petitioner wanted to make a legal argument for equitable tolling he should have provided sufficient evidence for this court to make such a ruling. This court further stated that it was not this court's responsibility to ferret out evidence and non-public documents that are beneficial to Petitioner. This court therefore concluded that Petitioner's Motion under § 2255 (#1) was untimely. Petitioner's Motion (#1) was dismissed as time-barred.

## MOTION FOR RECONSIDERATION

On August 11, 2011, Petitioner filed a Motion for Reconsideration (#8). Petitioner attached his own affidavit and also attached copies of correspondence from the United States Supreme Court. The affidavit and correspondence show that Petitioner filed a petition for a writ of certiorari with the Supreme Court which was postmarked March 20, 2009, and was received by the Supreme Court on March 25, 2009. The office of the clerk of the Supreme Court, William K. Suter, returned the petition to Petitioner with a letter which explained the corrections which needed to be made to the petition. The letter stated that Petitioner had 60 days to return the petition with the required corrections. On May 22, 2009, Suter's office sent a letter to Petitioner which stated that the "above-entitled petition for writ of certiorari

was originally postmarked March 20, 2009 and received again on May 22, 2009." The letter stated that the papers were being returned to Petitioner again because he failed to append the lower court opinion. On June 9, 2009, Petitioner sent a letter to Suter's office and stated that he was enclosing the lower court opinion to satisfy the requirements of the May 22, 2009 letter. On June 19, 2009, Suter's office sent a letter to Petitioner stating that his petition for writ of certiorari was being returned to him because he had not attached a notarized affidavit or declaration of indigency. On July 21, 2009, Suter's office sent a letter to Petitioner stating that his petition for writ of certiorari was received on July 21, 2009, and was being returned because it was not submitted within 60 days of the March 25, 2009 letter. The letter stated that "[i]f the lower court opinions, which were again not included in the petition, are criminal in nature, the petition can be resubmitted and docketed with a notation as to its timeliness."

Petitioner also attached copies of records from the Supreme Court which show that his petition for writ of certiorari was filed on July 30, 2009, with a response due on September 4, 2009. On August 11, 2009, the Government filed a waiver of right to respond. On August 13, 2009, the petition was distributed for "Conference of September 29, 2009," and was denied on October 5, 2009. Petitioner stated in his affidavit that the petition was not returned as untimely but was denied on the merits. Petitioner stated that he, therefore, relied on the date of the denial of October 5, 2009, as the date the limitations period for his Motion under § 2255 commenced. Petitioner stated that he delivered his Motion to the institutional mail room on October 4, 2010. This court notes that Petitioner's Motion, which was filed in this court on October 8, 2010, was signed by Petitioner on October 4, 2010.

The Government has not filed any opposition to the Motion for Reconsideration (#8).

After consideration of the documentation now provided by Petitioner, this court concludes that Petitioner originally filed his petition for writ of certiorari on March 20, 2009, and the Supreme Court ultimately accepted the petition and denied it on the merits on October 5, 2009. Therefore, Petitioner's Motion under § 2255 (#1), which was mailed on October 4, 2010, was timely.

Petitioner's Motion for Reconsideration (#8) is GRANTED. This court vacates its Opinion (#6), which dismissed the Motion (#1) as untimely, and will consider the merits of the Motion (#1).

## MOTION UNDER § 2255

### FACTS

On November 20, 2004, an Illinois state trooper determined that Petitioner's tractor-trailer was exceeding the speed limit as it traveled northbound on Interstate 57 in Iroquois County in the Central District of Illinois. The trooper conducted a traffic stop and noticed that Petitioner appeared nervous and his hands were shaking. During a search of the tractor-trailer, agents found a compartment hidden behind a load of produce in the refrigeration unit of the trailer and discovered 157 bundles containing 282 kilograms of cocaine with a wholesale value of approximately 5.6 million dollars.

On February 3, 2005, in Case No. 05-CR-20007, a grand jury in the Central District of Illinois charged Petitioner with one count of possession of more than five kilograms of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). A jury trial commenced on January 16, 2007. Petitioner was represented at trial by appointed counsel, John C. Taylor and Mark C. Palmer. On January 18, 2007, this court declared a

mistrial after the jury was unable to reach a verdict. The jury disclosed (on its own, with no inquiry from this court) that it was deadlocked 11 to 1 in favor of convicting Petitioner. On January 31, 2007, following a retrial, a jury found Petitioner guilty. On May 2, 2007, this court sentenced Petitioner to a mandatory term of life imprisonment and imposed a $100 special assessment. On May 3, 2007, Petitioner filed a timely notice of appeal.

On appeal, Petitioner was represented by Barry Levenstam of Jenner & Block in Chicago. Petitioner argued that the trial court erred in permitting the Government to prove Petitioner's knowledge of the cocaine by introducing evidence that Petitioner had, on prior occasions, transported drugs hidden under loads of produce in refrigerated semi-trailers. On December 31, 2008, the Seventh Circuit held that the court properly admitted this evidence under Rule 404(b) of the Federal Rules of Evidence and affirmed Petitioner's conviction. United States v. Vargas, 552 F.3d 550 (7th Cir. 2008). The Seventh Circuit thoroughly considered the relevant factors in concluding that the evidence was properly admitted. Vargas, 552 F.3d at 555-58. The court specifically concluded that "any unfair prejudicial value of the evidence was mitigated by the fact that it was 'a drop in the fairly large bucket of evidence' of [Petitioner's] involvement in drug trafficking." Vargas, 552 F.3d at 557, quoting United States v. Coleman, 179 F.3d 1056, 1062 (7th Cir. 1999).

## ANALYSIS

As noted, Petitioner filed his Motion under § 2255 (#1) in October 2010. Petitioner alleged that his Sixth Amendment right to effective assistance of counsel was violated. The Sixth Amendment provides criminal defendants the right to counsel. Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011), cert. denied, ___ S. Ct. ___, 2011 WL 4536500 (Oct. 3,

2011); citing U.S. Const. amend. VI. "[I]nherent in this right is that the defendant is entitled to the effective assistance of counsel . . . . The important inquiry is 'whether counsel's conduct so undermined that proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" United States v. Recendiz, 557 F.3d 511, 531 (7th Cir. 2009), quoting Strickland v. Washington, 466 U.S. 668, 686 (1984). "To prevail on an ineffective assistance claim, a petitioner must establish that his 'counsel's performance was deficient' and the 'the deficient performance prejudiced the defense.'" Koons, 639 F.3d at 351, quoting Strickland, 466 U.S. at 687.

To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Koons, 639 F.3d at 351. "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Koons, 639 F.3d at 351, quoting Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011). This court's review of Petitioner's attorneys' performance is "highly deferential" and reflects "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." See Davis v. Lambert, 388 F.3d 1052, 1059 (7th Cir. 2004), quoting Strickland, 466 U.S. at 689; see also Koons, 639 F.3d at 351.

To establish the prejudice prong of the Strickland standard, Petitioner must show "that there is a reasonable probability that but for his counsel's mistakes, the result of the

7

proceeding below would have been different, such that the proceedings were fundamentally unfair or unreliable." Yu Tian Li v. United States, 648 F.3d 524, 527 (7th Cir. 2011), citing Strickland, 466 U.S. at 694.

Petitioner first argues that his trial attorneys were ineffective because they failed to object to the trial testimony of Immigration and Customs Enforcement Agent Douglas Goodmanson that, based upon his training and experience, drug traffickers do not typically use unwitting individuals to transport over $5 million worth of cocaine. Petitioner argues that this expert testimony unfairly invaded the province of the jury to determine whether Petitioner "knowingly" transported the cocaine. Petitioner contends that Goodmanson testified as a mixed fact and expert witness and the "weight of his opinion was enhanced by his status as case agent and by the failure to caution the jury as to his dual witness roles."

Goodmanson, the case agent in Petitioner's case, was the last witness to testify at trial. He testified regarding his training and experience and provided expert testimony about the drug trade and the price of cocaine. Goodmanson then provided the following testimony:

> Q   And based on your training and experience, do you have training and experience in those that transport large amounts of cocaine?
>
> A   Yes, I do.
>
> Q   And based on your training and experience with drug organizations, do they use people referred to as "unwitting," or people who don't know, to transport large amounts of cocaine?
>
> A   No. Typically, unwittings are - - they might at the

>most would transport one kilogram of cocaine. The problem with using unwittings by an organization is they're not sure exactly where that cocaine or any other narcotic is going to end up because they don't have control of that person.

Goodmanson then went on to testify as a fact witness about his involvement with the stop of Petitioner's tractor-trailer on November 20, 2004. Goodmanson testified that the cocaine found in the trailer had a wholesale value of $5.6 million and a street value of about $28 million. Petitioner's counsel did not ask Goodmanson any questions.

Petitioner argues that permitting the investigating case agent to express an expert opinion on the ultimate issue in the case, whether Petitioner knowingly possessed the cocaine, was blatantly unfair and the failure to challenge the admission of the testimony constituted ineffective assistance of trial counsel. Petitioner has relied on the decision of the Fifth Circuit Court of Appeals in United States v. Ibarra, 493 F.3d 526 (5th Cir. 2007). In Ibarra, the district court allowed a DEA agent to testify that in his experience he had never seen a courier entrusted with an amount of cocaine that size (worth approximately $4 million) without the courier knowing that he was carrying something illegal. Ibarra, 493 F.3d at 532. The Government conceded that the admission of this testimony was an abuse of the district court's discretion. Ibarra, 493 F.3d at 532. The Fifth Circuit concluded that it was not harmless error because the testimony was improper as it "went directly to the ultimate issue to be determined by the jury" and there was a "reasonable possibility" that the testimony "contributed to the conviction." Ibarra, 493 F.3d at 532, quoting United States v. Williams, 957 F.2d 1238 1242 (5th Cir. 1992).

That is not the law in the Seventh Circuit, however. In <u>United States v. Willis</u>, the defendant was driving a six-wheel pickup truck that was pulling a goose-neck trailer. <u>Willis</u>, 61 F.3d 526, 527-28 (7th Cir. 1995). The defendant was stopped for speeding and, when the trailer was searched, 146 kilograms of marijuana were found. <u>Willis</u>, 61 F.3d at 527-28. At trial, a DEA agent gave the following testimony:

> Q. Based upon your experience in investigating these type of cases, does the person who is transporting the narcotics, the marijuana, know what's in the vehicles or in the trailers?
>
> A. I have not had a case yet where I have arrested or participated in a transportation case where the courier didn't know what he was carrying.

<u>Willis</u>, 61 F.3d at 532. The defendant argued on appeal that this testimony was an improper comment concerning his mental state, one that went to the ultimate issue of whether he knew there was marijuana in the trailer, and should have been excluded under Rule 704(b) of the Federal Rules of Evidence. <u>Willis</u>, 61 F.3d at 532. The Seventh Circuit noted that it had recently held that "when a law enforcement official states an opinion about the criminal nature of the defendant's activities, such testimony should not be excluded under Rule 704(b) as long as it is made clear, either by the court expressly or in the nature of the examination, that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes." <u>Willis</u>, 61 F.3d at 533, <u>quoting</u> <u>United States v. Lipscomb</u>, 14 F.3d 1236, 1242 (7th Cir. 1994). The Seventh Circuit held that the district court did not abuse its discretion in admitting the DEA agent's

testimony. Willis, 61 F.3d at 533. The court stated that the DEA agent offered no opinion concerning the defendant's knowledge or intentions and "did not even suggest that his opinion was based on some special knowledge of [the defendant's] mental processes." Willis, 61 F.3d at 533. The court noted that the DEA agent was called solely as an expert witness, knowledgeable in drug trade practices, and his testimony did not include any special knowledge of the defendant or of the investigation. Willis, 61 F.3d at 533.

Goodmanson's testimony in this case is that "unwittings" are not used to transport large amounts of cocaine by drug organizations because "they're not sure exactly where that cocaine or any other narcotic is going to end up because they don't have control of that person." This testimony, similar to the testimony in Willis, was based upon Goodmanson's expert knowledge in drug trade practices and did not include an opinion concerning Petitioner's knowledge or intentions. This court concludes that Goodmanson's testimony was proper expert testimony based upon the applicable Seventh Circuit law. See Willis, 61 F.3d at 533; see also United States v. Winbush, 580 F.3d 503, 511-12 (7th Cir. 2009) ("Although an expert may not testify or opine that the defendant actually possessed the requisite mental state, he may testify in general terms about facts or circumstances from which a jury might infer that the defendant intended to distribute drugs"); United States v. Mancillas, 183 F.3d 682, 705-06 (7th Cir. 1999) (finding that a drug agent properly gave opinion based on knowledge of the drug trade and not on any alleged familiarity with the defendant's mind); United States v. Brown, 7 F.3d 648, 653 (7th Cir. 1993) (it was clear that the expert was not expressing an opinion as to the defendant's actual mental state, "but was merely aiding the jury to draw an inference from the evidence"). Because Goodmanson's

expert testimony was proper based upon the clear precedent from the Seventh Circuit, this court does not need to consider the decision of the Fifth Circuit in Ibarra or the other cases from other jurisdictions cited by Petitioner.

Petitioner has argued that Goodmanson's testimony was improper because he testified as an expert witness and a fact witness. In the Seventh Circuit, however, "[t]estifying as both eyewitness and expert is permissible." United States v. de Soto, 885 F.2d 354, 360 (7th Cir. 1989). The Seventh Circuit has noted that "[p]olice officers frequently testify as expert witnesses on drug trafficking . . . and . . . expert testimony is helpful in explaining to jurors why otherwise innocent behavior may be evidence of drug dealing." United States v. Upton, 512 F.3d 394, 401 (7th Cir. 2008). Therefore, a police officer may permissibly testify in both capacities. United States v. Mansoori, 304 F.3d 635, 654 (7th Cir. 2002). The Seventh Circuit has recognized that there is a greater danger of unfair prejudice when the expert witness was also an eyewitness because this "dual role may confuse the jury, which may not understand its own function in evaluating the evidence." United States v. Doe, 149 F.3d 634, 637 (7th Cir. 1998). "The central danger seems to be that the jury may attach 'undue weight' to the officer's testimony, either by mistaking an expert opinion for what is really only an eyewitness observation, or by inferring that the officer's 'opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" United States v. Lipscomb, 14 F.3d 1236, 1242 (7th Cir. 1994). Therefore, this situation places a heavy burden on the district court to ensure that the jury understands its function in evaluating the evidence. See de Soto, 885 F.2d at 360; see also United States v. Foster, 939 F.2d 445, 452 (7th Cir. 1991). "[C]ourts must be mindful when the same witness

provides both lay and expert testimony." Upton, 512 F.3d at 401.  "Generally, the danger of unfair prejudice that results from an officer performing the dual role of eyewitness and expert can be minimized by cautionary instructions and by carefully constructed examination."  Lipscomb, 14 F.3d at 1242.

This court concludes that the requisite degree of caution was exercised in this case. Goodmanson testified as an expert witness first and testified later as a fact witness.  This court concludes that the Government structured the testimony "in such a way as to make clear when the witness [was] testifying to facts and when he [was] offering his opinion as an expert."  See Mansoori, 304 F.3d at 654; see also United States v. Morris, 576 F.3d 661, 676 (7th Cir. 2009).  In addition, the jury was instructed:

> You have heard witnesses give opinions about matters requiring special knowledge or skill.  You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such a person has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

See Foster, 939 F.2d at 453 (jurors instructed that they were free to credit as much or an little of the witness's testimony as they saw fit).  This court concludes that the separation of Goodmanson's expert testimony and fact testimony and this court's instruction to the jury eliminated any risk of prejudice to Petitioner in this case.  See Upton, 512 F.3d at 401-02;

Lipscomb, 14 F.3d at 1243. The jury was properly instructed and there is no reason to believe that the jury had any doubt about its function in evaluating the evidence. Therefore, Goodmanson's expert testimony was properly admitted at trial.

Based upon the applicable case law, this court certainly cannot say that it was outside the realm of reasonable professional assistance for Petitioner's counsel to decide not to challenge Goodmanson's expert testimony. In addition, Petitioner cannot show prejudice because this court would have overruled any objection made to the expert testimony provided by Goodmanson based upon precedent from the Seventh Circuit.

Petitioner next argues that his trial attorneys were ineffective for failing to prevent or challenge testimony that two key prosecution witnesses received reductions in their sentences based upon previous truthful testimony. Petitioner argues that this amounted to impermissible vouching for the credibility of the witnesses. He argues that "the tautological conclusion left to the jury was that the credibility of these two witnesses had already been verified by the government and by the judicial system."

At trial, Natris Morris testified that he was housed at the Dewitt County jail with Petitioner. Morris testified that he had many opportunities to talk to Petitioner. Morris testified that they discussed Petitioner's pending case. Morris testified that, at first, Petitioner said that he was innocent. Morris testified that Petitioner became more comfortable the more they talked and eventually "said that he was trafficking some drugs for a cartel out of Mexico and Texas, and he had got pulled over and got caught." Morris stated that Petitioner told him he was driving a semi truck and was transporting cocaine. Morris said that Petitioner told him the cocaine was located in a hidden compartment of the trailer of the semi. Morris

14

testified that he was currently in the custody of the Federal Bureau of Prisons based on a conviction for conspiracy to distribute five kilograms of more of cocaine, possession of cocaine with the intent to distribute it and carrying a firearm during a drug trafficking crime. Morris testified that he also had a prior conviction in Vermilion County in 1999 for delivery of a controlled substance. Morris testified that he pled guilty to the federal offenses and, as part of the plea, entered into a cooperation agreement with the Government. Morris said that he was hoping to gain a reduction in his sentence by cooperating with the Government. He testified that he was currently serving a sentence of 181 months. He agreed that he had been facing a sentence of 300 months and had already had his sentence reduced based on cooperation that was unrelated to Petitioner's case. He testified that he was hoping to receive an additional reduction from the judge.

During cross-examination, Morris testified that he was hoping to get a substantial reduction in his sentence based upon his testimony. He agreed with Petitioner's counsel that the only way the judge would consider him for a reduction in his sentence would be if the Government told the judge that he cooperated and made a motion to reduce the sentence. Morris agreed that "the person who has to be convinced that [his] testimony is helpful is the person who sits right here today (referring to the prosecutor, Eugene Miller)." Morris agreed that he was "in Mr. Miller's hands as to whether it gets that far." Morris also agreed that "[j]ail's not fun." On redirect examination, the Government discussed with Morris the terms of the cooperation agreement and his agreement "to provide complete and truthful testimony." Morris testified that his understanding was that he had to testify if needed and had to "be truthful, completely truthful at all times." Morris also testified that whether he got

a reduction of his time depended on how truthful his statements were.

Mario Martinez also testified for the Government at trial. He testified that he knew Petitioner because they grew up in the same town in Texas. Martinez testified that he and Petitioner were involved in a delivery of 55 pounds of marijuana in 2002. Martinez testified that the marijuana was transported in a semi truck with a refrigerated trailer and Petitioner was driving the tractor-trailer. Martinez testified that he was currently in the custody of the Federal Bureau of Prisons based upon a conviction in the Southern District of Indiana for conspiracy to distribute more than 1,000 kilograms of marijuana. Martinez testified that he also had two prior Texas convictions, a 1993 conviction for felony possession of marijuana and a 2001 conviction for felony theft. Martinez testified that he pled guilty to the federal offense and entered into a cooperation agreement. He testified that he was facing a sentence of 10 years and received a sentence of 70 months because of cooperation unrelated to Petitioner's case. Martinez testified that he had 18 months left to serve on his sentence.

During cross-examination, Martinez agreed with Petitioner's counsel that jail is not a fun place and he would rather be anywhere else than prison. Martinez testified that it was up to the judge whether he would get a greater reduction in his sentence but agreed that the Government would have to recommend a reduction and then it would be up to the judge. During redirect examination, Martinez stated that his understanding of what was required for him to have an opportunity to have his sentence reduced was "saying the truth and nothing else." The plea agreements and cooperation agreements entered by Morris and Martinez were admitted into evidence but did not go to the jury room during the jury's deliberations.

Petitioner argues that the testimony that Morris and Martinez had received reductions

in their sentences for prior cooperation constituted impermissible vouching because the evidence implied to the jury that the witnesses' veracity had been verified by the Government and the court.

The Government argues that Petitioner's trial counsel's strategy was to use the evidence of the witnesses' respective sentence reductions to impeach their credibility. Following this strategy, Petitioner's trial counsel vigorously cross-examined Morris and Martinez and argued that the sentencing reductions received by the cooperating witnesses established their lack of credibility and their motive to testify falsely to please the Government. In addition, this court gave a jury instruction which pointed out that Morris and Martinez had received benefits from the Government in connection with this case and instructed the jury to "give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care."

Based upon the record in this case, this court cannot agree with Petitioner that his counsel allowed impermissible vouching to occur. Petitioner has conceded that, "[o]f course, the prosecution is entitled to offer on direct examination testimony about the plea agreement and to introduce into evidence the fact that plea deals are conditioned upon truthful testimony." See United States v. Anderson, 303 F.3d 847, 856 (7th Cir. 2002); see also United States v. Johnson, 437 F.3d 665, 672 (7th Cir. 2006). "Just as defense counsel have every right to attack the credibility of witnesses who get deals, the prosecution is entitled to get into evidence the fact that the deals are conditioned upon truthful testimony." United States v. Thornton, 197 F.3d 241, 252 (7th Cir. 1999). "[T]he admission of these agreements does not constitute government vouching for the credibility of the witnesses." Thornton, 197

F.3d at 252. In fact, the Seventh Circuit has held that evidence of prior successful cooperation was not improper "bolstering" and was relevant evidence that may properly be admitted at trial. See United States v. Scott, 267 F.3d 729, 734-37 (7th Cir. 2001), see also United States v. White, 519 F.3d 342, 346 (7th Cir. 2008); United States v. Curry, 187 F.3d 762, 766-67 (7th Cir. 1999); United States v. Lindemann, 85 F.3d 1232, 1242-44 (7th Cir. 1996). Petitioner has relied on United States v. Cheska, 202 F.3d 947 (7th Cir. 1999) in support of his argument that he was prejudiced by his counsel's failure to object to evidence of the reductions in the sentences imposed on Morris and Martinez. The Seventh Circuit has recognized, however, that Cheska involves a completely different situation. "*Cheska* did not involve the admission of evidence but instead involved prosecutorial misconduct that stemmed from a comment that a witness 'had convicted 23 other people' when evidence of the witness' prior cooperation had not been admitted into evidence." Scott, 267 F.3d at 737 n.4, quoting Cheska, 202 F.3d at 949.

In this case, this court concludes that Petitioner's counsel employed a reasonable strategy to attack the credibility of the witnesses to which this court must give deference. In addition, based upon Seventh Circuit case law authority, this court concludes that the evidence complained of was properly admitted. The record shows that each side argued competing inferences from the cooperation agreements and plea agreements and the jury's role as independent fact finder was not undermined. See Thornton, 197 F.3d at 252. Petitioner's claim that he was denied the effective assistance of counsel is entirely without merit.

Petitioner has also argued that his appellate counsel was ineffective for failing to raise

these issues on appeal. This court concludes that it was not ineffective for Petitioner's appellate counsel to fail to raise the issue of Goodmanson's expert testimony and the issue of the evidence regarding Morris' and Martinez' sentence reductions on appeal. This court has already concluded that these issues lack merit. "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996), citing Strickland, 466 U.S. at 687.

For his final argument, Petitioner contends that the cumulative effect of the admission of Goodmanson's expert testimony and the impermissible vouching denied him his right to a fair trial. Because this court has concluded that the evidence complained of was properly admitted and Petitioner's counsel was not ineffective for failing to challenge the admission of the evidence, this argument fails as well.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. This court concludes that Petitioner has not made the required "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3).

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion for Reconsideration (#8) is GRANTED. This court therefore vacates its Opinion (#6), which dismissed Petitioner's Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (#1) as untimely.

(2) Following careful consideration of the merits of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255

(#1), Petitioner's Motion (#1) is DENIED.

   (3)  A certificate of appealability is DENIED.

   (4)  This case is terminated.

      ENTERED this 4th day of November, 2011

                s/MICHAEL P. McCUSKEY
                CHIEF U.S. DISTRICT JUDGE